PEOPLE v. KING

1. CRIMINAL LAW—EVIDENCE—IDENTIFICATION OF DEFENDANT—PHOTOGRAPHS—LINEUP.

No impermissibly suggestive method of identification was employed where a witness had gone through a "bunch of pictures" and positively identified defendant as the holdup man but it was only after he had picked defendant from the lineup that it was intimated that defendant was the one suspected of holding him up; another witness was shown many photographs without any indication of whether defendant's photograph was included which witness conclusively identified defendant, both from the photographs and the lineup; and although there was a discrepancy of four inches between the initial description given by the witnesses and defendant's actual height.

2. CRIMINAL LAW—EVIDENCE—IDENTIFICATION OF DEFENDANT—PRETRIAL IDENTIFICATION—PHOTOGRAPHS—MISIDENTIFICATION.

Convictions based on eyewitness' identification at trial following a pretrial identification by photograph will be set aside

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 371.
Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.
[3, 4] 53 Am Jur, Trial § 566 et seq.

on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

3. ROBBERY — EVIDENCE — JUDGE'S COMMENT — MISREPRESENTATION — FAIR TRIAL.

Trial court's comments on the evidence prejudicially deprived defendant of a fair trial where defendant never admitted that he intended to hold up a bar which he was charged with robbing or any other as the court's characterization of defendant's testimony as saying he intended to rob a bar and then abandoned the scheme was wholly to misrepresent it.

4. TRIAL—EVIDENCE—JUDGE'S COMMENT—STATUTES—COURT RULE.

A trial judge who elects to comment on the evidence, testimony, or character of a witness, as suggested by statute and acquiesced in by court rule, must take great pains to make sure it is at least an accurate representation of the subject and all such comment will be closely scrutinized (MCLA § 768.29; GCR 1963, 516.1).

Appeal from Court of Appeals, Division 1, Danhof, P. J., and Fitzgerald and McGregor, JJ., affirming Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted November 10, 1970. (No. 22 October Term 1970, Docket No. 52,792.) Decided December 30, 1970.

22 Mich App 590 reversed.

Alphonso King, Jr., was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant.

T. G. KAVANAGH, J. Defendant was convicted by a jury of armed robbery of a Detroit bar. On appeal from the Court of Appeals' affirmance of his conviction, he claims first, that his pretrial identification by the bar owner and barmaid were inadmissible and, second, that the trial court's comments on the evidence were prejudicial and deprived him of a fair trial.

Regarding the first claim—the tainted identification—we find no error.

The record discloses that the bar owner had gone through a "bunch of pictures" and positively identified defendant as the holdup man. It was only after he had picked defendant from the lineup that it was intimated that defendant was the one suspected of holding him up.

The record also establishes that the barmaid witness was shown many photographs without any indication as to whether defendant's photograph was included and that she conclusively identified defendant, both from the photographs and the lineup.

Review of the testimony supports the conclusion that, although there was a discrepancy between the initial description given by witnesses to the investigating officer and defendant's actual height 5′ 6″ and 5′ 10″ respectively), there was no impermissibly suggestive method employed in the instant case.

The procedure here employed meets the standard prescribed by the holding in *Simmons* v. *United States* (1968), 390 US 377, 384 (88 S Ct 967, 971, 19 L Ed 2d 1247, 1253):

"Instead, we hold that each case must be considered on its own facts, and that convictions based

on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno* [1967], 388 US 293, 301, 302, [87 S Ct 1967, 1972, 1973, 18 L Ed 1199, 1206], and with decisions of other courts on the question of identification by photograph."

We are not yet persuaded that Michigan should set a higher standard.

Regarding the claim that the trial court's comments on the evidence prejudicially deprived defendant of a fair trial, we are compelled to agree.

The judge's comment was contained in his instruction to the jury.

"Defendant, on the other hand, has taken the stand. He has known he was under no compulsion to do so but he did do so and in effect, says, on the day and date charged around a certain hour—I'm not even going to quote that, you've heard it, 'I was in that bar. *I was with two confederates before we went in.* Two of us went in. *We had determined to hold up a bar* but not that one.' So you have it already from his own lips that they intended to hold up a bar, not that one, he said it.

"In determining and weighing the intent you have a right to consider that but he says further that when I learned what was afoot from my companion who went in with me *I abandoned the enterprise.* Abandonment of an unlawful enterprise is a good defense if you get out completely and not wait until part of it's finished and try to get out. He says 'I abandoned it, I left.' And further, that *he met the confederates* later and that there was some money; that he was aware; he knew where it came from but he

got none of it. Now, you've got to weigh that, see whether you believe it or not." (Emphasis added.)

This does not fairly state the defendant's position. What defendant actually said was:

"*Q.* All right, did you know at the time that you left the car, you and the other man, and went into this Your Bar that it was *this man's intention* to rob the bar?

"*A.* No, not any further until we got in the bar.

"*Q.* All right, so you did know that *he intended* to rob the bar after you had gotten the beer, is that right?

"*A.* Yes, sir.

"*Q.* All right, I wonder—well, strike that.

Had there been any discussion in the car between you, the man, the person, the young man known as Dennis and—Junior?

"*A.* Not about this bar, *but he was talking about robbing some*—

"*Q.* Oh, I see. All right, now, when the man told you *he was going to go out and get Junior to help him on the robbery,* what did you do, Mr. King?

"*A.* Me and him got up out of the bar together. I stood in front of the bar and he went to Forest about in the store just after the bar, he went to Forest, went—and went down Forest and by this time when he got to the corner I turned and went down Mt. Elliott to Garfield to the playground turned, went across the playground to Canfield about a block from my house, be on Ellery between Morang on [*sic*] Canfield to Moran house." (Emphasis added.)

This defendant never admitted that *he* intended to hold up that bar or any other. He did not say he intended to rob a bar and then abandoned the scheme. To so characterize his testimony is wholly to misrepresent it.

While the weight of a trial judge's word may not equal the ton ascribed to the word of the President of the United States, he should remember how heavily it weighs with the jury. See *People* v. *Padgett* (1943), 306 Mich 545, 554, 555; *People* v. *Oates* (1963), 369 Mich 214; *People* v. *Barmore* (1962), 368 Mich 26.

If he elects to comment on the evidence, testimony, or character of a witness, as suggested by the legislature in MCLA § 768.29 (Stat Ann 1954 Rev § 28.1052) and acquiesced in by this Court in GCR 1963, 516.1, he must take great pains to make sure his comment is at least an accurate representation of the subject. Indeed, he may fairly be advised that since some of us have grave misgivings about the propriety of any such comment by a trial judge that all comment will be closely scrutinized so long as it is still permitted by court rule.*

Reversed and remanded.

T. E. BRENNAN, C. J., and T. M. KAVANAGH, J., concurred with T. G. KAVANAGH, J.

BLACK and ADAMS, JJ., concurred in result.

DETHMERS and KELLY, JJ., did not sit in this case.

---

* We take this opportunity to advise both the bench and bar that this is one of the court rules which will be under reconsideration by the Committee on Revision of Rules after January 1, 1971.