PEOPLE v JONES

1. CRIMINAL LAW—TRIAL—COURTS—JUDICIAL COMMENT—INTERESTS OF JUSTICE—APPEAL AND ERROR.

A trial judge in his charge to the jury in a criminal trial may make such comment on the evidence and the testimony and character of any witnesses as in his opinion the interest of justice may require, but such comment will be carefully scrutinized on appeal to assure that it is an accurate representation of the subject and that the judge clearly conveyed to the jury that he was commenting and not instructing.

2. APPEAL AND ERROR—JUDICIAL COMMENT—MANIFEST INJUSTICE—PRESERVING QUESTION.

A conviction will be reviewed on appeal because of improper judicial comment in a criminal trial where the comment results in manifest injustice and denial of a fair trial even though no timely objection to the comment is raised at trial.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted June 17, 1977, at Detroit. (Docket No. 28669.) Decided August 26, 1977.

Otis Jones was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Craig L. John,* Assistant Prosecuting Attorney, for the people.

*Kraizman & Kraizman,* for defendant on appeal.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 75 Am Jur 2d, Trial § 91 *et seq.*

Before: R. M. Maher, P. J., and N. J. Kaufman and F. J. Borchard,* JJ.

Per Curiam. Defendant appeals as of right his conviction by a jury of murder in the second degree, contrary to MCLA 750.317; MSA 28.549. Defendant's motion for a new trial was denied.

Defendant and deceased had been living together at deceased's house until the latter part of May, 1975, when defendant was told to leave. He did so. Nevertheless, both deceased and defendant were seen together by others from that time until the morning of the shooting, sometimes arguing, sometimes accusing each other of having friends of the opposite sex and sometimes threatening each other. At other times, they were observed drinking alcoholic beverages together and sometimes holding hands.

Defendant testified that the deceased had been his girlfriend, and he had lived with her a short while. The last night he spent at her house was the night before Mother's Day, May 11, 1975. He stated that on that Mother's Day, members of her family were over for lunch. He stated, "[s]he [the deceased] jumped on me that day, but I didn't hit her; all I did was catch her and hold her to keep her from hurting me". The deceased's sister was there and told him to get out, so he said he wasn't coming back.

According to defendant's testimony, on June 26, 1975, the deceased called defendant and said she was coming by. He told her he was getting ready to go out; he did not know when he hung up that she was coming. He went in the bathroom to wash his face, then went in the kitchen and ate dinner. He then went to take a bath. Some time later, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

back doorbell rang while he was standing in the tub drying off; he looked out the bathroom window and saw the deceased's car. He didn't go down to open the back door, so "she came in the front and let herself in". She walked past him into the bedroom and asked "What bitch did you have in the bed", and he said no one. He was standing in the bathroom in front of the mirror when he saw the gun pointed at the back of his head. He turned around and knocked the gun up, and "whirled" her out into the living room. She knocked over the television but he "[m]anaged to take the gun away from her and shove her down on the couch". He then asked her what was the trouble, what was the reason, and she didn't tell him. He further testified that she had left the door open, so he "went to pass her to close the door and she grabbed the gun a second time by the small end and snatched it, and that's when the gun went off— somehow or another my hand must have grabbed it and it went off".

Plaintiff produced two experts who testified that in their opinion the shot that killed deceased was fired from three to five feet away from the body.

Dr. Shah, a forensic pathologist, testified he did the autopsy on the deceased. He stated that she died from a shotgun wound, which had passed through the right breast, entered the chest wall, and caused extensive destruction to the internal organs. He testified that, from the appearance of the entrance of the shotgun wound and the fact that the pellets had not started to spread, he would estimate that the shot was fired from five to six feet away from the body. The pathway of the shot was from front to back, slightly downward and inward towards the midline. When asked if the deceased might have been sitting at the time,

he replied, "[i]t is possible or she might have been stooping down". He further testified that with this type of wound, the deceased would have died instantly or lived at most five minutes. The deceased was 5'9" and weighed 208 pounds. She had an alcohol reading of .26, which indicated to Dr. Shah that the deceased was highly to severely intoxicated.

With the exception of the defendant there were no other witnesses.

The trial court in part of his charge to the jury stated:

*"Now, at this time I am going to comment on the evidence somewhat* and you will remember my instructions at the beginning that *when a judge tells you his views of the case he does it only for the purpose of starting you to think* about the case and *it is you who must make the determination* of what the evidence is and *what the facts of the case are,* and the judge, in commenting on evidence, only does it for that purpose— to start you to thinking along the lines of the evidence in the case. It is still your duty to make the determination of the facts and weight of the evidence and not the judge's responsibility in that regard.

\* \* \*

"The jury should review and consider the circumstantial evidence as it has been presented and apply it to the facts and circumstances of this case. The People say that there is the following type of evidence: one, of the strained relationship between the parties which could arouse strong passion; two, evidence of threats by the defendant to kill the deceased; three, that the deceased had a photograph in her hand contradicting, as the prosecution argues, the claim that she had the shotgun and that there was a tussle over the weapon; *four, that —the fact in the case that at the time the shotgun was fired it was pointed directly at the deceased's breast— and I say that because it is human experience, I am sure, that a gun fires in the direction in which it is*

*pointed;* fifth, the testimony of the doctor that the gun was not fired at close range; sixth, the testimony of the firearms expert that the muzzle of the gun was three to five feet from the deceased when fired, negativing the theory of the defendant that there was a struggle over the weapon and so on, and also any possibility that she might have shot herself in this manner, * * * ." (Emphasis supplied.)

The charge was not objected to.

In *People v Ward,* 381 Mich 624, 627–628; 166 NW2d 451 (1969), Justice BRENNAN, writing for a unanimous Court, wrote:

"It is apparent that the trial judge misinterpreted CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052), which reads as follows:

" 'Sec. 29. It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and *in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.* The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.' (Emphasis supplied.)

"A judge's right to comment upon the evidence is precisely that. It is a right to comment. It must be exercised in words which convey clearly to the jury the fact that the judge is commenting rather than instructing. The court's charge or instructions to the jury delineate their duty. A jury may have the power but it has no right to disregard the court's instructions. In its final words the trial court stated flatly that it was the jury's duty to return one of three verdicts, murder in the first degree, murder in the second degree, or not guilty because of insanity. In his reference to the of-

fense of manslaughter and, more importantly, a verdict of not guilty, the court made it crystal clear that such verdicts would be contrary to his instructions."

In *People v King,* 384 Mich 310, 315; 181 NW2d 916 (1970), Justice T. G. KAVANAGH, again speaking for the entire bench, stated:

"If he elects to comment on the evidence, testimony, or character of a witness, as suggested by the Legislature in MCLA § 768.29 (Stat Ann 1954 Rev § 28.1052) and acquiesced in by this Court in (GCR 1963) 516.1, he must take great pains to make sure his comment is at least an accurate representation of the subject. Indeed, he may fairly be advised that since some of us have grave misgivings about the propriety of any such comment by a trial judge that all comment will be closely scrutinized so long as it is still permitted by court rule."

In the case at bar the trial judge became an unsworn witness when he stated:

"The People say that there is the following type of evidence: * * * four, that—the fact in the case that *at the time the shotgun was fired it was pointed directly at the deceased's breast—and I say that because it is human experience, I am sure, that a gun fires in the direction in which it is pointed;* * * * sixth, *the testimony of the firearms expert* that the muzzle of the gun was three to five feet from the deceased when fired, *negativing the theory of the defendant that there was a struggle over the weapon* and so on * * * ." (Emphasis added.)

Absent timely objection, a claimed error will only result in reversal on appeal if the Court concludes that it resulted in manifest injustice and the denial of a fair trial. *People v Cain,* 67 Mich App 433, 438; 241 NW2d 233 (1976), *lv den,* 397 Mich 820 (1976).

We cannot state affirmatively that, because of the trial court's comments, defendant received a fair trial or that there was no manifest injustice. Therefore, we reverse and remand for another trial. Due to our ruling we find it unnecessary to discuss the other grounds of alleged error. However, the trial court is cautioned to be cognizant of the Supreme Court's decisions in the lesser included offense cases, particularly *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975).

Reversed and remanded.