PEOPLE v JONES

Docket No. 59346. Submitted July 20, 1983, at Lansing.—Decided
December 5, 1983.

Jerry J. Jones was convicted of armed robbery, Genesee Circuit
Court, Ollie B. Bivens, J. Defendant appealed alleging, *inter
alia,* that the trial judge improperly commented on the testi-
mony of a prosecution witness in response to a question from
the jury. *Held:*

1. The central issue at trial was the identification of the
perpetrator of the crime, and the testimony of a fingerprint
expert was crucial. The trial court's remarks to the jury regard-
ing the testimony were such that they significantly increased
the expert's credibility. The result was serious and manifest
error requiring reversal.

2. The defendant's other issues raised on appeal are without
merit.

Reversed and remanded.

1. Appeal — Manifest Error — Preserving Question.

An appellate court may act to prevent fundamental injustice by
considering manifest and serious errors made at trial to which
no objections were made.

2. Trial — Judges — Evidence.

A trial judge who comments on the evidence presented must take
great pains to assure that his comments accurately represent
the subject.

3. Criminal Law — Juvenile Defendant — Waiver of Jurisdic-
tion — Double Jeopardy.

A circuit court is not prevented by double jeopardy considerations
from convicting a juvenile defendant following a probate court's
decision to waive jurisdiction over the defendant.

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 778.
[2] 75 Am Jur 2d, Trial § 95.
[3] 20 Am Jur 2d, Courts §§ 92, 93, 95, 104.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Joseph J. Farah,* for defendant on appeal.

Before: BEASLEY, P.J., and ALLEN and G. R. DENEWETH,* JJ.

G. R. DENEWETH, J. After a jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797. Defendant was sentenced to imprisonment for 15 to 25 years, and he appeals as of right.

At trial, the prosecution produced a fingerprint expert, Charles Helms, who testified concerning latent fingerprints found at the scene of the crime. The witness testified that he had compared the latent prints with fingerprints taken from defendant, and the witness stated his opinion that one of the latent prints matched defendant's right ring finger. The witness explained that his opinion was based on approximately ten points of identification between the latent print and the print of defendant's finger; however, no evidence was introduced to show what a "point of identification" is or how many points of identification are generally accepted by fingerprint experts as necessary for a positive identification.

After jury deliberations began, the trial judge responded as follows to a question from the jury:

"I have received a note from the jury as follows: 'How many points are available when comparing latent fingerprints and known fingerprints, 10, 20, hundreds or what?'

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"I cannot answer that for you. I cannot supply any evidence in this case. The only evidence that you can utilize is what came from the witness stand. I cannot do that. Okay. You'll just have to decide this based upon the evidence. All right.

"Somewhere in Mr. Helms' testimony he stated that he found 10 points, and the accepted procedure and usually the person who is testifying as to the comparison of the latent and the known print is the accepted standard in the field as to how many points are usually used to state whether or not that you give an opinion on. There are some fingerprint experts who will not testify if it's less than five. The standard usually is seven. But how many depends upon the examiner as possibly it could be hundreds, but usually when you get, if you find any fingerprint expert who gets ten points, he doesn't go any further, from all the testimony I've heard. They never go past that because they have a positive identification."

No objection was made at trial to the foregoing remarks, but an appellate court will act to prevent fundamental injustice by considering manifest and serious errors to which no objection was made. *People v Dorrikas,* 354 Mich 303, 316; 92 NW2d 305 (1958); *People v Jones,* 78 Mich App 309, 314-315; 259 NW2d 359 (1977). A judge who comments on the evidence must take great pains to assure that his comments accurately represent the subject. *People v King,* 384 Mich 310, 315; 181 NW2d 916 (1970); *People v Jones, supra,* p 314.

The central issue in this trial was the identity of the perpetrator of the crime. Defendant presented an alibi defense. One of the two victims of the crime was unable to identify defendant as the perpetrator and acknowledged that he described the perpetrator to the police as 5 feet, 8 inches tall. Defendant was slightly more than 6 feet tall. The other victim identified defendant as the perpetrator, but the strength of this identification was

weakened on cross-examination. When asked to identify the police officer who came in response to her call for help, the witness testified that she was unable to do so because she had been extremely frightened at the time. Again, when questioned about her identification of defendant at a prior in-court confrontation, the witness testified that she was unable to remember details because of her age and fright.

Under these circumstances, the testimony of the fingerprint expert was crucial. The remarks of the trial judge at issue here significantly increased the credibility of the expert, because the remarks informed the jury that any fingerprint expert who, like the expert here, found ten points of identification would conclude that a positive identification had been made. The trial judge became, in effect, an unsworn expert witness for the prosecution as to the standards generally followed by fingerprint experts. We conclude that manifest and serious error resulting in fundamental injustice is presented and that defendant's conviction must be reversed and the cause remanded for a new trial.

The other issues raised by defendant merit little discussion. The constitutional prohibition of double jeopardy did not prevent a conviction in circuit court following the probate court's decision to waive jurisdiction over this juvenile defendant. See *Breed v Jones,* 421 US 519, 538, fn 18; 95 S Ct 1779; 44 L Ed 2d 346 (1975), and *People v Saxton,* 118 Mich App 681, 688-689; 325 NW2d 795 (1982). The record does not support defendant's contention that the prosecutor overtly guided a witness at the probate court proceeding to identify defendant as the perpetrator. Defendant's other claims concerning identification cannot be considered in the current procedural posture of this case. Be-

cause no objection was made at trial to the identification testimony at issue and no evidentiary hearing was held, this Court has nothing to review. See *People v Lee,* 391 Mich 618, 626-627; 218 NW2d 655 (1974). Because the prosecution has no reason to present evidence relevant to such identification issues at trial, to resolve these issues on the basis of the evidence presented at trial is to deny the prosecution a hearing. Our opinion is not intended to prevent defendant from raising these identification issues on remand.

Reversed and remanded for further proceedings consistent with this opinion. We retain no jurisdiction.