PEOPLE v SAXTON

Docket No. 57099. Submitted December 7,.1981, at Grand Rapids.—
Decided August 24, 1982. Leave denied, 414 Mich 931.

Michael L. Saxton was charged with felony murder. At the time
of the commission of the crime, December 16, 1974, defendant
was 15 years old. A hearing was held in the juvenile court. It
was determined that there was probable cause to believe that
defendant committed the crime charged and jurisdiction was
waived to the Muskegon Circuit Court. Defendant was con-
victed of felony murder following a bench trial, Stanley Ever-
ett, J. The Court of Appeals affirmed in an unpublished memo-
randum opinion, Docket No. 27490, May 10, 1977. The Supreme
Court denied leave to appeal. The Court of Appeals then denied
defendant's delayed application for leave to appeal, Docket No.
48823, June 23, 1980. The Supreme Court, in lieu of granting
leave to appeal, remanded to the Court of Appeals for consider-
ation as on leave granted, 411 Mich 865 (1981). *Held:*

1. The procedure for a waiver of jurisdiction in juvenile cases
required a two-phase inquiry to determine in the first phase
whether probable cause existed to believe that the child com-
mitted the offense and in the second phase whether it was in
the best interests of the child and the public to waive jurisdic-
tion. The second phase required that the judge investigate five
criteria outlined in the Juvenile Court Rules and make written
findings in support of a waiver order. The juvenile court erred
in failing to hold the second-phase inquiry. However, subse-
quent evidence adduced at trial rendered the error harmless.

2. Burglary was defined at common law as the breaking and

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 339.

47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
Children § 19.

[2] 13 Am Jur 2d, Burglary §§ 1, 10, 22.

Sufficiency of showing that burglary was committed at night. 82
ALR2d 643.

[3] 21A Am Jur 2d, Criminal Law § 898.

[4] 5 Am Jur 2d, Appeal and Error §§ 882, 883.

[5] 21 Am Jur 2d, Criminal Law § 630.

Length of sentence as violation of constitutional provisions prohibit-
ing cruel and unusual punishment. 33 ALR3d 335.

entering of the dwelling house in the nighttime. The requirement that the breaking and entering take place at night was the critical element. The felony-murder statute at the time of the crime listed burglary as an underlying felony but did not include breaking and entering. Since the breaking and entering did not occur at night, defendant could not be convicted of felony murder. However, the judge's finding necessarily included a finding of guilty of second-degree murder. His conviction is reduced to second-degree murder.

3. The jury waiver statute is to be strictly construed to the extent that a written waiver is ineffective where a defendant does not waive his right in open court; however, to be valid a waiver does not require an acknowledgment where it is apparent that the waiver was made in open court. Defendant executed his waiver of jury trial in open court.

4. The trial court's finding that defendant was sane was not clearly erroneous.

5. A sentence of life imprisonment without parole does not constitute cruel and unusual punishment for first-degree felony murder.

Conviction vacated and remanded for entry of conviction of second-degree murder and for sentencing.

1. INFANTS — CRIMINAL LAW — JURISDICTION.

A procedure for waiver of jurisdiction over a juvenile to a criminal court which requires proof of probable cause that the juvenile committed the act charged is not violative of constitutional law prohibiting double jeopardy.

2. BURGLARY — COMMON LAW.

Burglary was defined at common law as the breaking and entering of a dwelling house in the nighttime; the requirement that the breaking and entering take place at night was a critical element.

3. CRIMINAL LAW — JURY WAIVER.

The jury waiver statute is to be strictly construed to the extent that a written waiver is ineffective where a defendant does not waive his right in open court; to be valid a waiver does not require an acknowledgment where it is apparent that the waiver was made in open court (MCL 763.3; MSA 28.856).

4. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed (GCR 1963, 517.1).

5. CRIMINAL LAW — SENTENCING — CRUEL AND UNUSUAL PUNISH-
   MENT.
   A sentence of life imprisonment without parole does not consti-
   tute cruel and unusual punishment for first-degree felony mur-
   der.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gerald D. Warner,* Prosecuting Attorney, and *Judith K. Simonson,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: T. M. BURNS, P.J., and R. B. BURNS and M. J. KELLY, JJ.

M. J. KELLY, J. On November 21, 1975, defendant was convicted after a bench trial of felony murder, MCL 750.316; MSA 28.548, and sentenced to serve life without parole. On May 10, 1977, this Court affirmed his conviction and the Supreme Court denied leave to appeal. Defendant applied for delayed leave to appeal which this Court denied. However, the Supreme Court remanded the case to this Court to consider the additional alleged errors.

On December 16, 1974, Lawrence Doctor returned from school to find his mother lying on the floor of his room. When the police arrived, it was determined that she had been beaten to death by unknown assailants. A search of the house also disclosed that a wine bottle of pennies and Mrs. Doctor's car were missing.

At about the same time Mrs. Doctor's body was discovered, defendant and Timothy J. Spytma, both 15 years of age, were involved in a traffic accident while driving Mrs. Doctor's car. Both boys

tried to leave the scene of the accident, but Daniel Kruszynski, a witness to the accident, prevented them from leaving. Spytma exited from the car with a rifle in a case and placed it on the roof of the car. The two boys again tried to flee, but Kruszynski and another witness caught them. When Kruszynski placed defendant back in the car, defendant pulled a gun on him, but Kruszynski was able to disarm defendant. The police arrived at the scene of the accident and placed defendant and Spytma under arrest. Defendant and Spytma were taken to a hospital where a blood test was run. Defendant's blood test demonstrated that he was intoxicated. A urinalysis performed upon defendant revealed that he had taken drugs which caused mild sedation but left him fully aware and competent. The police also analyzed blood stains found on defendant's clothes which matched the blood type of Mrs. Doctor. Finally, fingerprints found in the Doctor home matched defendant's fingerprints.

During the defendant's trial, he presented an insanity defense. His mother, father, and sister testified that he had a violent temper and had once assaulted his mother with a knife. Dennis E. Walsh, a psychiatrist, testified that, at the time the murder was committed, defendant knew his actions were wrong but that he did not have the power to resist the act. He opined that defendant had an antisocial personality. Walsh's testimony was rebutted by the testimony of Melissa Benedek, a psychiatrist, who opined that defendant was not mentally ill at the time of the commission of the crime.

The trial court found defendant guilty of first-degree murder and sentenced him to life imprisonment without parole. Defendant now appeals his

conviction as on leave granted raising several issues.

I

Defendant's first allegation of error concerns the adequacy of the juvenile court's waiver of jurisdiction hearing. At the time defendant was charged with the murder of Mrs. Doctor, defendant was only 15 years of age. Pursuant to MCL 712A.4; MSA 27.3178(598.4), the juvenile court held a hearing to decide whether defendant should be tried as an adult in the Muskegon County Circuit Court. On December 17, 1974, a hearing was held resulting in a December 27, 1974, order waiving jurisdiction.

MCL 712A.4; MSA 27.3178(598.4) reads in part:

"(3) Before the court waives jurisdiction, it shall determine if there is probable cause to believe that the child committed an offense which if committed by an adult would be a felony.

"(4) Upon a showing of probable cause, the court shall conduct a hearing to determine whether or not the interests of the child and the public would be served best by granting a waiver of jurisdiction to the criminal court. In making the determination, the court shall consider the following criteria:

"(a) The prior record and character of the child, his physical and mental maturity and his pattern of living.

"(b) The seriousness of the offense.

"(c) Whether the offense, even if less serious, is part of a repetitive pattern of offenses which would lead to a determination that the child may be beyond rehabilitation under existing juvenile programs and statutory procedures.

"(d) The relative suitability of programs and facilities available to the juvenile and criminal courts for the child.

"(e) Whether it is in the best interests of the public welfare and the protection of the public security that the child stand trial as an adult offender."

At the time of defendant's waiver hearing, the procedure for waiver of jurisdiction was governed by JCR 1969, 11.1. *People v White,* 51 Mich App 1, 4; 214 NW2d 326 (1973), *lv den* 391 Mich 819 (1974); *People v Jackson,* 46 Mich App 764, 769; 208 NW2d 526 (1973). The rule provided for a two-phase procedure requiring the juvenile court to determine in the first phase whether probable cause existed to believe that the child committed the offense and in the second phase whether it was in the best interest of the child and the public to waive jurisdiction. The rule required that the judge fully investigate five criteria which corresponded to the criteria established in MCL 712A.4; MSA 27.3178(598.4). JCR 1969, 11.6 also required the court to include written findings in support of its waiver order.

"[A]n order waiving jurisdiction will be affirmed whenever the judge's findings, based upon substantial evidence and upon thorough investigation, show either that the juvenile is not amenable to treatment, or, that despite his potential for treatment, 'the nature of his difficulty is likely to render him dangerous to the public, if released at age * * * or to disrupt the rehabilitation of other children in the program prior to release.'"

*People v Schumacher,* 75 Mich App 505, 511-512; 256 NW2d 39 (1977), quoting *People v Fields (On Rehearing),* 391 Mich 206, 242, fn 13; 216 NW2d 51 (1974).

In this case, the probate judge held one hearing

on December 17, 1974. During the hearing, extensive evidence was introduced to establish probable cause. After determining that probable cause existed, the juvenile court immediately commenced the second phase of the waiver hearing. Without taking any additional evidence, the judge waived jurisdiction to the Muskegon County Circuit Court. This procedure violated JCR 1969, 11.1(b) because the juvenile court did not conduct a full investigation to determine whether the best interests of the child and the public were served by the waiver.

Furthermore, the judge failed to consider the waiver criteria established by MCL 712A.4; MSA 27.1378(598.4) and JCR 1969, 11.1(b)(1)-(5). While the seriousness of the offense, the suitability of programs and facilities, and the public interest were considered by the judge, the judge failed to consider defendant's prior record and whether the offense was part of a repetitive pattern. Because the juvenile judge failed to hold a phase two hearing, no evidence was presented on these criteria. Therefore, the juvenile judge's waiver order was not based upon substantial evidence nor was it the product of a thorough investigation.

However, we do not believe that reversal is required on this issue in this case. During the trial, evidence was presented which demonstrated that defendant had a violent personality. Evidence was presented showing that he assaulted his mother with a knife and was prone to outbursts of temper and assaultive behavior. Furthermore, evidence was introduced that defendant pulled a weapon on Daniel Kruszynski. In light of these facts, we find the juvenile court's failure to consider defendant's prior record or whether his actions were part of a repetitive pattern was harmless.

II ·

Citing *Breed v Jones,* 421 US 519; 95 S Ct 1779; 44 L Ed 2d 346 (1975), defendant argues that the juvenile waiver proceeding and his subsequent trial in the Muskegon County Circuit Court violated the Fifth Amendment Double Jeopardy Clause. In *Breed,* defendant, a 17-year-old boy, was charged with armed robbery under the California Juvenile Code. A juvenile hearing was held in which defendant was found guilty of the charged offense and, in a later hearing, the juvenile court waived jurisdiction to superior court. The superior court found defendant guilty and ordered his commitment to the California Youth Authority. Defendant filed a petition for a writ of habeas corpus in federal court which was denied by the United States District Court. He appealed this decision to the Court of Appeals which reversed. On appeal to the Supreme Court, the writ of habeas corpus was granted. In granting the writ, the Court noted that there was no persuasive distinction between the juvenile proceedings and those held in the superior court. *Id.,* 531. The Court found that defendant had been put to trial before the juvenile judge and that jeopardy attached at that time. *Id.,* 531. However, the Court also wrote:

"We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins v Loisel,* 262 US 426, 429 [67 L Ed 1062; 43 S Ct 618] (1923); *Serfass v United States,* 420 US 377, 391-392 [43 L Ed 2d 265; 95 S Ct 1055] (1975). The instant case is not one in which the judicial determination was simply a finding of, *e.g.,* probable cause. Rather, it was an adjudica-

tion that respondent had violated a criminal statute."
*Id.,* 538, fn 18.

In the present case, the procedure used to waive
juvenile jurisdiction in Michigan is quite different
from that used in California. Unlike the California
proceeding, the Michigan proceeding does not adju-
dicate defendant's guilt or innocence. Rather, it is
a determination of whether probable cause exists
to find that defendant committed the alleged
crime. Therefore, the Michigan procedure does not
place defendant in jeopardy twice and is within
those allowable waiver proceedings described in
*Breed.*

## III

Defendant contends that he could not be con-
victed of felony murder where the underlying
felony, breaking and entering, was not one of the
enumerated felonies contained in MCL 750.316;
MSA 28.548. According to defendant, the term
"burglary", as used in the statute, referred to the
common-law offense of breaking and entering a
dwelling house in the nighttime. He argues that
since the breaking and entering occurred in the
daytime, he could not be convicted of first-degree
murder.

On the date of Mrs. Doctor's death, MCL
750.316; MSA 28.548 read:

"All murder which shall be perpetrated by means of
poison, or lying in wait, or any other kind of wilful,
deliberate and premeditated killing, or which shall be
committed in the perpetration, or attempt to perpetrate
any arson, rape, robbery, *burglary,* larceny of any kind,
extortion or kidnapping, shall be murder of the first
degree, and shall be punished by solitary confinement

at hard labor in the state prison for life." (Emphasis supplied.)

On March 11, 1980, 1980 PA 28 was passed amending the statute by deleting the word "burglary" and replacing it with the words "breaking and entering a dwelling".

At common law, burglary was defined as the breaking and entering of a dwelling house in the nighttime. LaFave and Scott, Handbook of Criminal Law, § 96, p 708. The requirement that the breaking and entering take place at night was a critical element of burglary. *Cole v People,* 37 Mich 544, 548 (1877). The Supreme Court has recognized that burglary is distinguishable from the various breaking and entering crimes passed by the Legislature. *Harris v People,* 44 Mich 305, 307; 6 NW 677 (1880).

To determine the meaning of burglary as it was used in the felony-murder statute in effect in 1974, we must examine what the drafters of the 1931 felony-murder statute intended. *People v MacDonald,* 409 Mich 110, 119; 293 NW2d 588 (1980). Criminal statutes are to be strictly construed and any ambiguity is to be resolved in favor of lenity. *People v Dempster,* 396 Mich 700, 707, 715; 242 NW2d 381 (1976); *People v Krist,* 93 Mich App 425, 433; 287 NW2d 251 (1979), *lv den* 407 Mich 963 (1980). As discussed above, burglary was a crime distinguishable from the statutory crimes of breaking and entering. As used in the felony-murder statute, the term "burglary" referred to the common-law crime which required a breaking and entering of a dwelling house in the nighttime.

In the present case, the breaking and entering took place in the daytime. The breaking and entering therefore fails to establish the underlying felony and defendant's first-degree murder convic-

tion cannot be affirmed. However, the judge necessarily found defendant guilty of second-degree murder so we order his conviction reduced to that offense.

## IV

Defendant also contends that his waiver of a trial by jury was inadequate because it was not timely executed in open court. MCL 763.3; MSA 28.856 requires the waiver of a jury trial to be made in writing in open court after defendant has been arraigned and has had an opportunity to consult with counsel. The requirements of the statute are to be strictly construed to the extent that a written waiver is ineffective where defendant does not waive his right in open court. *People v Carl Johnson,* 99 Mich App 547, 551; 297 NW2d 713 (1980). On March 31, 1975, defendant executed a written waiver of a jury trial in open court after being advised by the trial judge. Defendant's argument that omission of reference to the Sixth Amendment of the United States Constitution in the waiver form and in the court's advice is a fatal omission has no merit.

## V

Defendant claims that the trial court's determination that defendant was sane when he committed the crime was clearly erroneous. A trial court's findings of fact will not be set aside unless they are clearly erroneous. GCR 1963, 517.1; *People v Parney,* 98 Mich App 571, 583; 296 NW2d 568 (1979). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

been committed. *Tuttle v Dep't of State Highways,*
397 Mich 44, 46; 243 NW2d 244 (1976).

MCL 768.21a; MSA 28.1044(1), which was effec-
tive on August 6, 1975, states the test for legal
insanity:

"(1) A person is legally insane if, as a result of mental
illness as defined in section 400a of Act No. 258 of the
Public Acts of 1974, being section 330.1400a of the
Michigan Compiled Laws, or as a result of mental
retardation as defined in section 500(g) of Act No. 258 of
the Public Acts of 1974, being section 330.1500 of the
Michigan Compiled Laws, that person lacks substantial
capacity either to appreciate the wrongfulness of his
conduct or to conform his conduct to the requirements
of the law.
"(2) A person who is under the influence of volunta-
rily consumed or injected alcohol or controlled sub-
stances at the time of his alleged offense shall not
thereby be deemed to have been legally insane."

In this case, defendant presented the testimony
of his mother, father, and sister to show that he
had a violent temper. He also presented Dennis E.
Walsh, a psychiatrist who testified that defendant
knew his actions were wrong but that he lacked
the willpower to resist. Walsh opined that defen-
dant was insane at the time the crime was com-
mitted. However, Melissa Benedek, the prosecu-
tion's psychiatrist, testified that defendant was
sane at the time the crime was committed. She
stated that defendant was not suffering under an
irresistible impulse when he committed the mur-
der. The evidence also established that the drugs
taken by defendant left him fully aware and com-
petent. After reviewing the record in this case, we
are unable to say that the findings of fact made by
the trial court were clearly erroneous.

## VI

Defendant also raises two issues concerning the effectiveness of both his trial counsel and his first appellate counsel. Defendant argues that their failure to raise the issues raised in this appeal demonstrate that his prior counsel was ineffective. However, since all the issues in this appeal, except the issue concerning the underlying crime in the felony-murder statute, were meritless, we decline to find that his prior counsel was ineffective.

Finally, defendant argues that his sentence of life imprisonment without parole was cruel and unusual punishment. That claim has been consistently rejected by the Michigan Supreme Court and we do likewise. *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976).

Defendant's conviction for first-degree murder is vacated. The case is remanded for entry of a conviction of second-degree murder and sentencing on that offense.