PEOPLE v WHETSTONE

Docket No. 53409. Submitted December 4, 1981, at Lansing.—Decided
   September 21, 1982.

   Brenda J. Whetstone was convicted of felony murder and felony-
   firearm following a jury trial in Saginaw Circuit Court, Freder-
   ick J. Borchard, J. The underlying felony which gave rise to the
   felony-murder charge was breaking and entering an occupied
   dwelling with intent to commit larceny. The proofs at trial
   established that the murder and the underlying felony took
   place in the daylight hours of October 15, 1978. No objection
   was raised before the trial court on the basis that breaking and
   entering a dwelling in the daytime with intent to commit
   larceny was not one of the enumerated felonies in the felony-
   murder statute at the time of the crime. Defendant appeals.
   *Held:*

   1. The trial court did not err in permitting the use of the
   preliminary examination testimony of the prosecution witness
   who could not be located at the time of trial. The record
   establishes that the prosecution undertook every reasonable
   effort to secure the presence of that witness at the trial.

   2. The references at trial to the defendant's other unrelated
   criminal activities do not mandate reversal in view of the fact
   that there was no objection at trial to that testimony and that
   testimony came in response to a matter introduced by defense
   counsel.

   3. Prior to its 1980 amendment, the felony-murder statute
   did not list breaking and entering a dwelling as one of those
   felonies which would give rise to a felony-murder charge.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 739, 750.
[1, 2] 81 Am Jur 2d, Witnesses § 2.
[2] 5 Am Jur 2d, Appeal and Error §§ 772-775.
[3] 5 Am Jur 2d, Appeal and Error § 717.
   29 Am Jur 2d, Evidence § 320 *et seq.*
[4, 5] 13 Am Jur 2d, Burglary § 22.
[5, 7] 40 Am Jur 2d, Homicide § 72.
[6] 73 Am Jur 2d, Statutes § 295.

Burglary, one of the enumerated felonies, was at common law the breaking and entering in the nighttime of a dwelling with intent to commit larceny. Michigan has retained the nocturnal element of burglary. Accordingly, the daytime breaking and entering charged and shown by the prosecution would not support a conviction for felony murder under the statute prior to its 1980 amendment.

4. While the felony-murder conviction must be set aside, the jury necessarily found facts necessary to support a conviction for second-degree murder.

Conviction for felony murder is vacated; remanded for entry of conviction of second-degree murder and for resentencing.

V. J. BRENNAN, P.J., dissented. He would hold that, since there was no objection below based upon the fact that the charged felony was not one of the enumerated felonies in the felony-murder statute and there was no prjudice because premeditation was in fact shown, the conviction for felony murder should be affirmed.

### OPINION OF THE COURT

1. WITNESSES — CRIMINAL LAW — PRELIMINARY EXAMINATION TESTIMONY — PRODUCTION OF WITNESSES — DUE DILIGENCE.

The preliminary examination testimony of a witness may be used at trial only if the prosecution has exercised due diligence to secure the presence of the witness at trial; the determination of due diligence rests within the sound discretion of the trial court; due diligence requires that everything reasonable, not everything possible, be done.

2. WITNESSES — CRIMINAL LAW — PRODUCTION OF WITNESSES — DUE DILIGENCE.

A trial court's determination on the question of whether the prosecution has exercised due diligence in attempting to secure the presence of a witness at trial will not be overturned unless there is a showing of an abuse of discretion on the part of the trial court.

3. CRIMINAL LAW — EVIDENCE — OTHER CRIMES.

Evidence that a criminal defendant committed other crimes may be admitted where, although not admissible under the similar acts doctrine, such elicitation of evidence of other crimes is occasioned by a relevant response to matters brought out by the defense; a defendant cannot complain about the admission of testimony which the defendant invited or instigated.

4. BURGLARY — COMMON LAW.

> The rule at common law is that the crime of burglary is a breaking and entering of a dwelling house in the nighttime; the time of the offense was considered a critical element of the common-law crime of burglary because night was the time honest men might fall prey to criminals; Michigan has continued to recognize that burglary refers only to a nocturnally committed breaking and entering.

5. HOMICIDE — FELONY MURDER — BURGLARY.

> The term "burglary" as used in the felony-murder statute prior to the 1980 amendment to that statute referred to the common-law crime of burglary which was a breaking and entering of a dwelling house in the nighttime; accordingly, prior to the 1980 amendment of the felony-murder statute, a conviction for felony murder could not be sustained upon proofs of a breaking and entering in the daytime (MCL 750.316; MSA 28.548).

6. CRIMINAL LAW — STATUTES — JUDICIAL CONSTRUCTION.

> Criminal statutes are strictly construed and any ambiguity is resolved in favor of the accused.

7. HOMICIDE — FELONY MURDER — SECOND-DEGREE MURDER.

> A conviction for felony murder based upon a felony other than one of the felonies enumerated in the felony-murder statute should be reduced to a conviction for second-degree murder, since the trier of fact under such circumstances necessarily found that the defendant had committed all the elements necessary to sustain a conviction for second-degree murder.

DISSENT BY V. J. BRENNAN, P.J.

8. HOMICIDE — FELONY MURDER — PRESERVING QUESTION — EVIDENCE — PREMEDITATION.

> *A conviction for felony murder should not be overturned on appeal on the basis that the charged felony was not one of the felonies enumerated in the felony-murder statute where there was no objection on that ground in the trial court and no showing of prejudice since the evidence at trial would sustain a finding of premeditation.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Patrick M. Meter,* Chief Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Lynn Chard* and *Stuart B. Lev),* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and ALLEN and T. C. MEGARGLE,* JJ.

ALLEN, J. May a defendant be convicted of felony murder where the underlying felony, breaking and entering, occurred in 1978, before breaking and entering was made an enumerated felony in 1980 under MCL 750.316; MSA 28.548? This question of first impression comes to us on the following facts.

Sometime between 10 and 11 a.m. on Sunday, October 15, 1978, Martin Rueger was found lying on the ground at his home in Saginaw. The car door was open and the motor running. The back doors were open, the window of one of the doors was broken and the house was ransacked. Two portable television sets, a check protector, some clothing, three purses, a copper coffee urn, and an electric broom were missing. An autopsy revealed that Rueger had been shot five times and had bled to death. Testimony given at trial by persons in the neighborhood clearly established that the breaking and entering and subsequent shooting occurred during daylight hours, probably sometime between 8 and 10 a.m.

One year later, in October, 1979, Teresa Beville contacted the police and informed them that a woman named Brenda Whetstone had shot Martin Rueger. Ms. Beville stated that she met Brenda in the summer of 1975, that she and Brenda had a homosexual relationship, eventually moving to Flint where they shared an apartment together, and that in October, 1978, Brenda and Monica

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Blair brought to the apartment a television set, a
vacuum cleaner, clothes, and some purses. Ms.
Beville further stated that on that occasion Brenda
explained that she believed she had just shot a
man and was relieved when she heard on televi-
sion that the man was dead so she did not have to
worry about being identified. The information Ms.
Beville gave the police earned her a $5,000 re-
ward, although she did not know about the reward
until after meeting the police.

As a result of the information given the police,
charges of first-degree felony murder and felony-
firearm were filed against defendant November 5,
1979. Count I of the information reads as follows:

"MURDER FIRST DEGREE—FELONY
did feloniously, while in the perpetration or attempted
perpetration of a Breaking and Entering of an Occupied
Dwelling With Intent to Commit Larceny, kill and
murder one MARTIN RUEGER; Contrary to Sec. 750.316,
CL 1970, as amended; MSA 28.548."

Count II charged possession of a firearm while
committing a felony. At trial, Teresa Beville took
the stand and testified, even though she knew she
did not need to testify in order to get the reward.
She described the shooting as follows:

"Well, she said that he drove up behind them as they
were leaving the house, getting ready to leave. They
was in the car. And he went around to the back of the
car and she said she could see him, his mouth moving,
like he were trying to remember the license plate. He
came around to the passenger's side of the car and she
shot him. She said she shot him three times and she got
out and shot him some more."

Defendant was tried by a jury, and on April 1,
1980, was found guilty of first-degree murder, MCL

750.316; MSA 28.548, and felony-firearm, MCL 750.227b; MSA 28.424(2). On June 16, 1980, defendant was sentenced to mandatory life in prison to be served consecutively to the mandatory two-year prison term for felony-firearm. She appeals of right raising three issues noted below.[1] At oral argument on appeal, this Court *sua sponte* raised the issue of whether a defendant may be convicted of a felony murder when the underlying felony set forth in the information was not an enumerated felony under MCL 750.316; MSA 28.548. The Court asked the parties to submit briefs on the issue. Those briefs have been submitted.

Defendant's issues (2) and (3), if valid, would require reversal of defendant's conviction and remand for a new trial. Defendant's issue (1) and the issue raised *sua sponte* by this Court, if valid, only require that the conviction be modified to reduce the offense to murder in the second degree and that the matter be remanded for resentencing on second-degree murder. *People v Allen,* 390 Mich 383, 386; 212 NW2d 21 (1973). We first discuss defendant's issues (2) and (3).

At the preliminary examination held October 25, 1979, Leona Goff testified that she had been in the same dormitory at the county jail with defendant and at that time defendant had confided to her that she shot Martin Rueger. At the time of trial, March 26 through April 1, 1980, the prosecution was unable to find Leona Goff to subpoena her as a witness. Due to the witness's unavailability,

---

[1] (1) Did the prosecution fail to establish the corpus delicti of felony murder prior to the admission of defendant's confession? (2) Did the trial court violate the constitutional right to confront witnesses against defendant by ruling that the prosecution had shown due diligence in producing witness Leona Goff and by permitting admission of her preliminary examination testimony? (3) Did error occur when the prosecutor elicited testimony from a key witness as to defendant's heroin addiction and an alleged knife attack?

and after hearing testimony from several wit-
nesses relating to attempts to find the witness, the
trial court allowed the preliminary examination
testimony to be read to the jury pursuant to MRE
804(b)(1).[2]

Quoting extensively from *Ohio v Roberts,* 448
US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980),
defendant argues that the prosecution failed to
exercise due diligence in keeping track of the
witness during the five-month period between pre-
liminary examination and trial. Counsel contends
that a higher degree of effort was required in this
case because the charge was first-degree murder
and because defendant had a constitutional right
of confrontation. We do not quarrel with the ad-
monitions in *Roberts, supra,* or with the claim that
due diligence must be shown. We simply disagree
with the conclusion that the prosecution failed to
exercise due diligence. The determination of due
diligence rests within the sound discretion of the
trial court. *People v Fournier,* 86 Mich App 768,
778; 273 NW2d 555 (1978). Due diligence requires
that everything reasonable, not everything possi-
ble, be done. *People v Riley Williams,* 57 Mich App
199, 202; 225 NW2d 691 (1974).

We have examined the record and find the
prosecution made substantial efforts to locate the
witness. Prior to trial the prosecutor had tried to
find Ms. Goff and had even subpoenaed Rose Goff,
Leona Goff's mother. When Rose Goff failed to

---

[2] "(b) *Hearsay exceptions.* The following are not excluded by the
hearsay rule if the declarant is unavailable as a witness:

"(1) *Former testimony.* Testimony given as a witness at another
hearing of the same or a different proceeding, or in a deposition taken
in compliance with law in the course of the same or another proceed-
ing, if the party against whom the testimony is now offered, or, in a
civil action or proceeding, a predecessor in interest, had an opportu-
nity and similar motive to develop the testimony by direct, cross, or
redirect examination."

appear, the prosecutor obtained a bench warrant. Later, Rose Goff did appear and testified she did not know of her daughter's whereabouts and knew of no family member who would know. The prosecutor stated he tried to reach Ms. Goff's brother at the Grass Lake and the Muskegon correctional facilities, but the brother never answered. The process server testified that when he could not find Leona Goff at her last known address, he checked with the post office and with Consumers Power but found no forwarding address had been given. Two individuals checked with the Department of Social Services and found Leona Goff was not drawing welfare anywhere in Michigan. A trial court's determination on due diligence will be overturned on appeal only where a clear abuse of discretion is shown. *People v Bell*, 74 Mich App 270, 275; 253 NW2d 726 (1977). Given the extensive efforts to find the witness, we find no abuse of discretion.

We now turn to defendant's issue (3) mentioned earlier. Did error occur when the prosecution on redirect examination elicited testimony from Teresa Beville, the prosecution's chief witness, as to defendant's heroin addiction and an alleged knife attack? We think not.

Although defendant is correct in asserting that the testimony in question does not fall within the similar acts doctrine set forth in MRE 404(b),[3] the testimony was relevant to responses made by the witness upon rigorous cross-examination by defense counsel. Repeatedly, upon cross-examination of Ms. Beville, counsel inquired why she waited a year to inform the police and why she finally decided to reveal the incident. Near the end of cross-examination, the witness responded:

---

[3] The use of heroin and the knife attack do not show motive, scheme, plan, or system as to the killing of Martin Rueger.

"*A.* Well, me and my roommate—well, he knew about the situation because I told him. *And after that incident that night before at this house, and me thinking about all the things she had done to me and was continually doing,* might have done to somebody else, I decided the best thing to do was bring it on out in the open." (Emphasis supplied.)

Upon redirect examination the prosecutor picked up the theme by inquiring as follows:

"You had indicated on cross-examination that during this year period of time before you called the police with your information, that Brenda had done some things to you?"

In response to this question and a follow-up question, the witness related that defendant was on heroin and that on one occasion defendant came to the witness's home and threatened her with a knife. It is obvious that the evidence of defendant's heroin addiction and the knife incident came to light because defense counsel "opened the door". Defendant cannot complain of admission of testimony which defendant invited or instigated. *People v Barker,* 97 Mich App 253, 257; 293 NW2d 787 (1980).

In addition to having invited the testimony, defendant failed to object to its introduction at trial. It is well settled that a claim on appeal which was not raised at trial cannot be considered in the appellate court, unless a clear injustice is demonstrated. *People v Eroh,* 47 Mich App 669; 209 NW2d 832 (1973); *People v Scott,* 23 Mich App 568; 179 NW2d 255 (1970). Because defendant invited the testimony in the first place, such injustice cannot be shown.

We next turn to consideration of the remaining

two issues,[4] either of which, if valid, would call for a reduction of defendant's conviction of first-degree murder to second-degree murder. On the date Martin Rueger was killed and his house broken into (October 15, 1978), and on November 5, 1979, the date of the information charging defendant with breaking and entering, Michigan's felony-murder statute read:

> "All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, *burglary,* larceny of any kind, extortion, or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." MCL 750.316; MSA 28.548. (Emphasis supplied.)

On March 11, 1980, House Bill 4111, which became 1980 PA 28, was passed and given immediate effect. This act amended the statute by deleting the word "burglary" emphasized above, and replacing it with the words "breaking and entering a dwelling". Likewise, the amendatory act deleted the word "rape" and replaced it with the words "criminal sexual conduct in the first or third degree".

Since defendant must be judged by the statute as it existed at the time of the offense, the question arises whether defendant had been convicted of a felony which, at the time of the offense, was not an enumerated offense under MCL 750.316; MSA 28.548. Defendant's brief on this issue, submitted at this Court's request, argues that the term "burglary" refers to the common-law offense

---

[4] Defendant's issue (1) as set forth in fn 1 *supra,* and the issue raised *sua sponte* by this Court.

of breaking and entering a dwelling house in the nighttime, and since the breaking and entering in the instant case occurred in the daytime, defendant was wrongfully charged. In response, the brief submitted by the people argues that the common-law crime of "burglary" encompasses both breaking and entering in the nighttime and breaking and entering in the daytime. The question posed is of first impression.

Defendant correctly states the general rule that at common law the crime of burglary was a breaking and entering of a dwelling house in the nighttime. 3 Wharton's Criminal Law (14th ed), § 337, p 211; 13 Am Jur 2d, Burglary, § 22, p 322; LaFave & Scott, Handbook on Criminal Law, § 96, p 713. The time of the offense was considered a critical element because night was the time honest men might fall prey to criminals. LaFave & Scott, *supra.*

In Michigan, as elsewhere, the common-law crime of burglary referred only to a breaking and entering committed in the nighttime. *Cole v People,* 37 Mich 544 (1877). We therefore reject the prosecution's argument that the common-law offense of burglary encompassed daytime offenses, such as that involved in the case at bar, as well as nighttime breakings and enterings.

We observe, however, that the common-law crime of burglary has expanded to encompass daytime offenses in certain jurisdictions where the legislature has enacted new statutory definitions of the crime of burglary. 13 Am Jur 2d, Burglary, § 22, p 332. *State v Williams,* 189 La 355; 179 So 452 (1938); *State v Petit,* 32 Wash 129; 72 P 1021 (1903). Unlike the Louisiana and Washington legislatures, Michigan's Legislature never has enacted a "burglary" statute; instead it codified a series of

breaking and entering statutes. The 1835 laws include two statutes proscribing breaking and entering a dwelling house in the nighttime, essentially the common-law offense of burglary. 1838 Rev Stat, part IV, tit 1, ch 4, §§ 9-10. Other statutes enacted at that time proscribed breakings of other buildings at other times and under different circumstances. 1838 Rev Stat, part IV, tit 1, ch 4, §§ 11-13. The various statutes describing different breakings were re-enacted with few substantive changes until 1964, when the distinction between night and day was abolished with respect to these crimes. 1964 PA 133. The present breaking and entering statutes also do not distinguish between night and day. MCL 750.110 *et seq.;* MSA 28.305 *et seq.*

While in other states the statutes have obliterated the distinction between day and night offenses, *e.g., Williams, supra,* Michigan courts have continued to recognize the distinctions between common-law burglary and the statutory breakings. In *Harris v People,* 44 Mich 305; 6 NW 677 (1880), the Supreme Court wrote that "burglary is a common-law offense, distinct from statutory breakings that resemble it". In *People v Fox,* 142 Mich 528; 105 NW 1111 (1905), the court found a technical error in referring to a statutory breaking in the nighttime as "burglary".

In determining the meaning of "burglary" as it was used in the felony-murder statute in effect in 1978, we must determine what the drafters of the 1931 felony-murder statute intended. *People v McDonald,* 409 Mich 110; 293 NW2d 588 (1980). The subsequent modification of the statute to include breaking and entering as an enumerated felony cannot govern offenses committed before the effective date of the modification unless the drafters of

the previous statute had the same intent and clearly expressed that intent. As we believe that the common-law offense of burglary included only those breakings committed nocturnally, and we observe that the courts have maintained the distinction between the common-law offense and statutory breakings, we do not believe we can broadly read the felony-murder statute as including daytime breaking and enterings amid the enumerated felonies.

Our conclusion in this respect is supported by the recent decision of another panel of this Court. *People v Saxton*, 118 Mich App 681; 325 NW2d 795 (1982). In that case, as in the instant case, defendant was charged and found guilty of felony murder where the underlying felony occurred in 1974 before breaking and entering was one of the enumerated felonies. Defendant argued that the breaking and entering could not be included within the term "burglary" since, as in the instant case, the breaking and entry occurred in the daytime. Likewise, as in the instant case, that defense was not raised at trial. Despite the fact that the issue was not raised at trial this Court found the error reversible, holding:

"As discussed above, burglary was a crime distinguishable from the statutory crimes of breaking and entering. As used in the felony-murder statute, the term 'burglary' referred to the common-law crime which required a breaking and entering of a dwelling house in the nighttime.

"In the present case, the breaking and entering took place in the daytime. The breaking and entering therefore fails to establish the underlying felony and defendant's first-degree murder conviction cannot be affirmed. However, the judge necessarily found defendant guilty of second-degree murder so we order his conviction reduced to that offense." *Saxton, supra,* pp 690-691.

We fully agree with Judge BRENNAN that the facts disclosed premeditation. So too did the testimony in *Saxton*. But we must disagree that the issue can be overlooked or considered waived where the crime charged was nonexistent when the offense was committed. We are directed to construe criminal statutes strictly and to resolve any ambiguity in favor of the accused. *Yates v United States,* 354 US 298, 304-305; 77 S Ct 1064; 1 L Ed 2d 1356 (1957); *Bell v United States,* 349 US 81, 83; 75 S Ct 620; 99 L Ed 905 (1955). We conclude that "burglary", as it was used in the felony-murder statute in effect in 1978, referred only to the common-law crime.

In this case, the evidence is clear that the offense was committed during the daylight hours. The breaking and entering therefore fails to establish the underlying felony and defendant's first-degree (felony) murder conviction cannot stand. The jury necessarily found defendant guilty of second-degree murder, however, so we order her conviction reduced to that offense.

As it is necessary to modify defendant's conviction to second-degree murder, we need not determine whether all of the elements of felony murder were established before defendant's confession was admitted into evidence. Defendant admits that, at the time the confession was admitted into evidence, the elements of second-degree murder had been established. We therefore see no prejudice.

Defendant's conviction for first-degree (felony) murder is vacated. The case is remanded for entry of a conviction of second-degree murder and resentencing on that offense.

T. C. MEGARGLE, J., concurred.

V. J. BRENNAN, P.J. *(dissenting).* I respectfully

dissent. I cannot agree with the majority's finding that defendant's conviction must be reduced to second-degree murder because she was charged and convicted of felony murder with the underlying felony of breaking and entering an occupied dwelling instead of burglary.

The defendant did not raise an objection in the trial court to the information charging felony murder with breaking and entering as the underlying felony; the defendant did not object during the trial or during the trial court's instruction to the jury, and the defendant did not raise the issue on appeal. This Court raised the issue *sua sponte.* As a matter of fact, at the preliminary examination, the defendant's attorney objected to the information on the basis that it stated "breaking and entering an occupied dwelling", which he contended was a misdemeanor. The information was then amended to state "breaking and entering an occupied dwelling with intent to commit a larceny". Defendant did not contend that the information did not state a crime as defined. Since defendant made no objection to the charge or conviction on the basis of the underlying felony which supported the felony-murder charge and conviction, I would find no manifest injustice to the defendant, and no reversible error.

MCL 767.76; MSA 28.1016, states in part:

"No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or

omission in form or substance of or any variance with the evidence."

Based upon the foregoing provision, the Court, in *People v Southwick,* 272 Mich 258, 264; 261 NW 320 (1935), held that a claim of error in the information, raised for the first time on appeal, will not be considered. Moreover, this Court has found that a defendant's claim that the information does not state a crime pursuant to the statute will not be considered where that objection was not raised in the trial court. *People v Kildow,* 19 Mich App 194; 172 NW2d 492 (1969), *lv den* 383 Mich 803 (1970). Also, see *People v Walsh,* 27 Mich App 100; 183 NW2d 360 (1970). Therefore, I would find that we should not review the issue of whether defendant was properly charged. Furthermore, I do not think that we should review the issue of whether the defendant was properly convicted. In *People v Horton (On Remand),* 107 Mich App 739, 742; 310 NW2d 34 (1981), this Court found no reversible error where the defendant was convicted of felony murder even though the trial court had instructed the jury on criminal sexual conduct rather than common-law rape as the underlying felony. Based upon the foregoing, I would find that the issue should not be reviewed by this Court, or in the alternative, there was no manifest injustice to the defendant since the facts clearly show that defendant committed first-degree murder standing alone without mention of the underlying felony. She was confronted by the deceased outside of the deceased's home. She shot the deceased several times, got out of her car and shot him several more times before she drove away. Everything was present here, premeditation, motive, and intent.

I would affirm defendant's conviction for felony murder.