PEOPLE v SPRINGS

Docket No. 78-3954. Submitted November 8, 1979, at Grand Rapids.—
Decided June 2, 1980.

Ezekiel Springs was charged with felonious assault and pander-
ing. After a jury trial in Kent Circuit Court, John T. Letts, J.,
defendant was acquitted on the assault charge but convicted on
the pandering charge. During the trial, the prosecution under-
took to depict the defendant as a bad man by repeated refer-
ences to other illegal acts allegedly committed by the defendant
and to illegal acts by other witnesses. The prosecutor further
blatantly injected the issue of race into the trial by continuous
emphasis of the fact that, while defendant was black, most of
the women he was involved with were white. The trial court in
its charge to the jury on the pandering charge included the
statutory element of "encouraging" a female to become a
prostitute, even though the information charged defendant only
with "unlawfully, feloniously and wickedly inducing, persuad-
ing, inveigling or enticing" a female to become a prostitute.
Defendant appeals. *Held:*

1. While it is the duty of the prosecutor to present the
evidence against the defendant in a zealous manner, the prose-
cutor exceeded the bounds of legitimate prosecutorial zeal and
tactics by adopting the strategy of depicting the defendant as a
bad man by systematic and repeated references to other crimes
allegedly committed by defendant and to the allegedly illegal
acts of other witnesses and by the repeated characterizations of
the defendant and the witnesses. The prosecutor's intentional
injection of the issue of race into the trial by itself mandates
reversal.

2. It was reversible error for the trial court to instruct the
jury that defendant could be found guilty under the pandering
statute if the jury found that the defendant had engaged in

REFERENCES FOR POINTS IN HEADNOTES
[1] 63 Am Jur 2d, Prosecuting Attorneys § 27.
   75 Am Jur 2d, Trial § 189 *et seq.*
[2, 4] 4 Am Jur 2d, Appeal and Error § 541.
   75 Am Jur 2d, Trial § 193.
[3, 5] 75 Am Jur 2d, Trial § 645 *et seq.*

"encouraging" a female to become a prostitute. While the statute includes "encouraging" as an element of pandering, the information did not include "encouraging" as part of the charge. Absent a motion to amend the information, it was error for the trial judge to *sub silentio* amend the information by his jury charge.

Reversed and remanded.

V. J. BRENNAN, P.J., concurred in the result only. He would reverse and remand on the basis of the intentional injection of the issue of race but would hold that neither the remainder of the prosecutor's tactics nor the trial court's charge to the jury mandates reversal.

### OPINION OF THE COURT

1. CRIMINAL LAW — TRIAL — PROSECUTOR'S DUTY — PRESENTATION OF EVIDENCE — FAIR TRIAL.

It is the duty of the prosecutor to present the evidence against a criminal defendant in a zealous manner; however, the manner of presentation must be within proper limits so as to insure the defendant a fair trial.

2. CRIMINAL LAW — TRIAL — FAIR TRIAL — PROSECUTOR'S CONDUCT — TRIAL STRATEGY — RACE.

A criminal defendant in a trial for felonious assault and pandering is denied a fair trial where the prosecution exceeds the bounds of legitimate prosecutorial zeal and tactics by adopting the strategy of depicting the defendant as a bad man by systematic and repeated references to other illegal acts allegedly committed by the defendant and other witnesses, including references to the defendant's illegal use and sale of marijuana, to defendant's illegal sale of intoxicants, to the defendant's prior incarceration and to various hearsay characterizations of defendant as being a pimp and of various witnesses as being prostitutes and where the prosecution intentionally injects the issue of race in the trial; the injection of race into a trial alone constitutes reversible error.

3. CRIMINAL LAW — JURY INSTRUCTIONS — PANDERING — ENCOURAGING — INFORMATION — AMENDMENTS — STATUTES.

Reversible error results from instructing a jury in a trial for pandering that the charged crime includes "encouraging" a female to become a prostitute where, although the pandering statute includes encouraging a female to become a prostitute within the scope of the prohibited acts, the information did not charge the defendant with "encouraging" the female but rather

charged the defendant only with "unlawfully, feloniously, and wickedly inducing, persuading, inveigling or enticing" a female to become a prostitute; a trial judge may not *sub silentio* amend the information by expanding the scope of the crime charged by his charge to the jury, defendant having the right to sufficient notice and opportunity to defend any new charge other than that contained in the information (MCL 750.455; MSA 28.710).

CONCURRENCE IN RESULT ONLY BY V. J. BRENNAN, P.J.

4. CRIMINAL LAW — TRIAL — PROSECUTOR'S CONDUCT — RACE.

*Reversal of a criminal conviction is mandated where the prosecution intentionally injects the issue of race in a trial.*

5. CRIMINAL LAW — JURY INSTRUCTIONS — PANDERING — HARMLESS ERROR.

*It is harmless error to include the statutory element of "encouraging" a female to become a prostitute in a jury trial for pandering even though the information fails to charge that element where the evidence against the defendant is so overwhelming that there is no likelihood that the jury would find that the defendant had not been "inducing, enticing, inveigling and persuading" a female to become a prostitute but that defendant had been "encouraging" the same.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* for defendant.

Before: V. J. BRENNAN, P.J., and BEASLEY and G. E. BOWLES,* JJ.

G. E. BOWLES, J. Defendant was charged with felonious assault, contrary to MCL 750.82; MSA 28.277, and unlawfully, feloniously and wickedly inducing, persuading, inveigling or enticing a female person to become a prostitute (pandering),

---

* Former Circuit Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

contrary to MCL 750.455; MSA 28.710. Defendant was acquitted by a jury on the assault charge but was found guilty on the pandering charge. He was sentenced as an habitual offender to a 15 to 40 year term of imprisonment and now appeals as of right.

Defendant contends that the prosecutor's conduct throughout the course of the proceedings deprived him of a fair trial. It is the duty of the prosecutor to present evidence against a defendant in a zealous manner within proper limits. *Berger v United States,* 295 US 78; 55 S Ct 629; 79 L Ed 1314 (1935), *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971). The foremost obligation of the prosecutor is to seek justice.[1] As Michigan Supreme Court Justice CAMPBELL noted almost a century ago:

"Nothing can bring more contempt and suspicion on the administration of justice than the failure of its ministers to respect justice."[2]

The thrust of the prosecutor's strategy in this case was to depict defendant as a bad man by making repeated references to other illegal acts allegedly committed by defendant or other witnesses. The prosecutor made his "game plan" obvious during argument on whether a certain question was proper:

"I think it's very probative, Your Honor. The question is whether or not the defendant is a pimp, whether or not he lives off the earnings of prostitutes, whether or not he engages in enticing and inveigling and getting

---

[1] American Bar Association Code of Professional Responsibility, Ethical Consideration 7-13.

[2] *People v Moyer,* 77 Mich 571, 573; 43 NW 928 (1889).

women not only to engage in and become prostitutes, or whether or not he associates with them, and allow the jury to make legal and lawful inferences that they can make from the association of those witnesses that are presented.

"We did not present the witness. She was cross-examined. She was presented by the defendant to substantiate some sort of theory that the defense is working under. And it is probative to indicate not only—you're not impeaching her by a criminal record, but showing the varying activities for which the defendant is on trial. That is, whether or not those individuals with whom he associates are prostitutes and whether or not they engage in acts of prostitution.

"I think it's highly—I think it's—it's ludicrous to say that if he is surrounded by a number of women who have engaged in prostitution who admit that they have engaged in prostitution, but have not been caught by the police, that they are not allowed to be asked that question."

These sentiments were repeated after the trial court ruled that a witness could be asked a question about her prior association with a person involved in pornography, but unrelated to defendant, for the limited purpose of impeachment. The prosecutor objected to this limitation upon testimony elicited by the question and the following ensued:

"[Assistant Prosecutor]: It's beyond that Your Honor. Excuse me, I hate to interrupt. It's beyond that, it's what manner of person is here.

"THE COURT: Well—

"[Assistant Prosecutor]: In other words not to say that she's a liar, but we're just showing for the most part, maybe all, that what type of individual this is, what type of individual is Donna Decker, and then their relationship with the defendant.

"We are charging him with being a pimp, not an armed robber or anything of that sort. The nature of

the case is sex and the use of women to engage in sexual intercourse so the proceeds can float to a pimp.

"This is exactly the situation that we brought out in cross examination of defendant's witnesses. We did not bring them in. They were brought in and we're showing the type of background that these individuals are. Thank you."

Defendant was subject to a litany of allegations concerning his past conduct which were not charged in the information. During his case in chief the prosecutor brought before the jury:

1. Hearsay testimony from complainant's guardian detailing the events in question and possibly leading jurors to infer that defendant was using 13 and 14-year-old girls as prostitutes,

2. Evidence concerning marijuana use by defendant at a disco that he owned and that he supplied marijuana to others,

3. Testimony from Betty Scott, repeated on several occasions, that defendant was her pimp,

4. Testimony that defendant had slapped Ms. Scott twice in the past without reason used for the purpose of proving defendant's guilt on the felonious assault charge on the theory that if he did it once he'd probably do it again,

5. Witnesses who were asked if they knew Betty Scott was a prostitute working for defendant,

6. Another witness who was asked if she was a prostitute working for defendant,

7. Questions concerning whether defendant sold beer at his disco without a license,

8. Testimony from Roger Fee that he had told the complainant that he had heard defendant was known to beat women—this was elicited despite a court ruling that the testimony was not admissible, and

9. Testimony from Susan Hatfield that Donna

Decker had told her that defendant was currently on parole or that he had been in prison.

The prosecutor also inquired into the collateral matter of the alleged criminal conduct of other persons. Donna Decker was asked, over objection, whether she had committed an act of prostitution at the age of 16, long before she had met defendant. Ms. Decker was also asked to detail her activities with a Mr. Tabor, an individual with absolutely no connection to this case.[3]

Similarly, Susan Hatfield was asked about her relationship with Mr. Tabor and whether she had induced Ms. Decker to engage in prostitution at the age of 16.

Defendant, himself, was asked about his alleged failure to pay child support and personal debts. The prosecutor further inquired about his living off the earnings of prostitutes.

It is patently clear that the prosecutor exceeded the bounds of legitimate prosecutorial zeal and tactics. Due process requires that a defendant not be convicted for what he has done in the past. The United States Supreme Court held in *Michelson v United States,* 335 US 469, 475-476; 69 S Ct 213; 93 L Ed 168 (1948), that:

"The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and

---

[3] The prosecutor asked Ms. Decker if she had received $100 from Mr. Tabor in payment for sexual intercourse at age 16. He further inquired with respect to Mr. Tabor about his propensities for "taking pictures, having pornographic literature, dogs and men and things like that".

deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (Footnotes omitted.)

The most disturbing aspect of the prosecutor's behavior was his blatant injection of race as an issue in the trial. Defendant was black, while most of the women allegedly involved with him were white. At the outset of trial the prosecutor established that the complainant's boyfriend was white. One witness was asked if many white girls frequented defendant's disco. Other witnesses were asked if alleged prostitutes working for defendant were white or black. Inquiries were also made concerning the race of the men who sought defendant's prostitutes. The prosecutor read a letter written by defendant to the judge before trial accusing the prosecution of a racial motivation in bringing the case. He also inquired about the race of defendant's prior trial counsel.[4]

Had the prosecutor otherwise acted properly in all respects this would have mandated reversal. The injection of race into a trial constitutes reversible error. *People v Hill,* 258 Mich 79, 87-89; 241 NW 873 (1932), *United States v Grey,* 422 F2d 1043, 1045-1046 (CA 6, 1970).

Defendant also contends that certain comments made by the trial judge require reversal of his

[4] We can say with some certainty that the race issue did inflame the passions of the jurors in this case. Midway through trial the only black juror asked to be dismissed telling the judge that the other people on the jury had gotten "cold". During deliberations another member of the jury said to her, "we want to get on this prostituting because Pat, you would know about that one, wouldn't you?" Finally, the juror wrote a letter to defendant while he was awaiting sentencing suggesting that she ultimately gave way to peer pressure in voting to find him guilty.

conviction. This claim of error relates to an incident during trial when one of the jurors expressed concern over the fact that defendant was looking at the list of jurors' names. The trial judge interviewed each juror in chambers separately with counsel.

After assuring each juror individually that he or she need not worry, he stated in the presence of all:

"Let me say this, that even though your name might be mentioned, I have never in all the time I've set *[sic]* here had anyone intimidated after or during the trial, as far as the name coming before anyone in that courtroom, including the defendant or witnesses and whatnot.

"I have never been threatened in the nineteen years that I've been on the bench, and I've been tooling with —I've been around criminals since 1946. That is in the supervisory capacity or dealing with them in some way or other, and I've never had any problems with them whatsoever."

Admittedly, the trial judge faced a most difficult and sensitive problem, but the court's remarks, particularly when considered with the conduct of the prosecutor, had the effect of characterizing defendant as a member of a dangerous class. This effect was accentuated when the trial court told the jury that defendant would no longer see the list of names. He concluded by informing the jurors that during the remainder of the trial they would be referred to by number rather than name.

No Michigan authority is directly on point, but the observation of the Michigan Supreme Court in *People v King,* 384 Mich 310, 315; 181 NW2d 916 (1970), is apt:

"While the weight of a trial judge's word may not

equal the ton ascribed to the word of the President of
the United States, he should remember how heavily it
weighs with the jury."

See also *People v London,* 40 Mich App 124, 128;
198 NW2d 723 (1972).

Defendant also urges that the trial court's in-
structions on pandering broadened the scope of the
information. Defendant was charged with "unlaw-
fully, feloniously and wickedly inducing, persuad-
ing, inveigling or enticing a female person * * * to
become a prostitute". However, in its charge, the
court stated:

"Now the defendant is charged with the crime of
inducing, inveigling, persuading, *encouraging, or* entic-
ing a female person to become a prostitute. The defen-
dant has pleaded not guilty to this charge; to establish
this charge the prosecution must prove each of the
following elements beyond a reasonable doubt." (Em-
phasis supplied.)

Although the statutory definition of pandering
includes "encouraging" a female to become a pros-
titute,[5] the information did not so charge defen-
dant. The prosecution argues that "encouraging"
shares the same meaning as "inducing, inveigling,
persuading or enticing" so that the variance be-
tween the information and the charge does not
warrant reversal. We disagree. Inducing, invei-
gling, persuading, and enticing all imply an active
leading to a particular action. Encouraging indi-
cates a less active role. It falls short of persuading.
Supporting or reacting positively to a decision
already reached by an individual constitutes a
form of encouragement. While the information
properly could have been amended, even during

[5] MCL 750.455; MSA 28.710.

the trial, so long as defendant had sufficient notice and opportunity to defend against the new charge, it was impermissible for the trial judge to amend the information *sub silentio* by his instructions to the jury. See *People v Gibbons,* 260 Mich 96; 244 NW 244 (1932), *Watson v Jago,* 558 F2d 330 (CA 6, 1977). Since it cannot be determined whether the jury's verdict was based on the encouraging or inducing, persuading, inveigling or enticing portion of the charge, reversal is required.

A careful examination of the record leads to the inescapable conclusion that defendant was denied a fair trial.

Reversed and remanded.

BEASLEY, J., concurred.

V. J. BRENNAN, P.J. *(concurring in result only).* I concur in result only.

I, too, would reverse on the basis of the prosecutor's continuous references to race. However, I do not agree that many of the other alleged errors set forth in the majority opinion warrant reversal.

I find from my reading of the record that many of the prosecutor's statements quoted in the majority opinion as objectionable were made outside the presence of the jury, where they could be aired without prejudice to defendant. In cases like this one it is not unreasonable that the prosecutor's feelings toward the defendant would be less than hospitable. I also would find admissible: testimony tending to show defendant's method and means of inducing young girls to become prostitutes and their turning over to him their earnings from these endeavors, defendant's use of marijuana and alcohol as an inducement and to break down the girls' resistance to practicing prostitution, defendant's threats of physical abuse, the girls' testimony that they work as prostitutes for defendant,

and the prosecutor's cross-examination of defendant's witnesses as to whether they were prostitutes.

I find also that under the circumstances the judge's comments to the jurors were permissible and proper. When it was brought to the judge's attention that one of the jurors had expressed concern over the fact that defendant was looking at the list of juror's names, it was proper for the judge to take steps to dispel their concerns. The comments he then made were proper. I do not agree that they had the effect of characterizing defendant as a "member of a dangerous class". And, even if they did, I would point out that by the time this incident occurred the admissible testimony had already painted a clear picture that defendant was, in fact, a member of a dangerous class, namely pimps.

The majority also feels that the court's instructions on pandering broadened the scope of the information. The argument that this constitutes reversible error because it enlarges the charge makes me chuckle when I note that the word "encouraging" was used in the company of such strong language as inducing, inveigling, persuading and enticing. After being presented with all the sordid testimony mustered against this most unsavory defendant, I am convinced that the word "encouraging" was not on the jury's mind. This was not a case where the evidence was so borderline that the jury could have been convinced to believe defendant was not guilty of the charges of inducing, enticing, inveigling, and persuading, but might be guilty of encouraging. Under the facts presented here and the overwhelming evidence of defendant's guilt I would conclude that the inclusion of the word "encouraging" in the charge was at best harmless.